IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL C. ROBERSON, #02167695 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv188 |
| NORRIS JACKSON, ET AL. | § | |

<u>REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Michael C. Roberson, a prisoner confined at the Montford Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights occurring at the Beto Unit. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The present Report concerns Defendants' three motions to dismiss, (Dkt. ##110, 111, 114). Plaintiff's amended complaint, (Dkt. #71), is the operative complaint in this proceeding. He is suing (1) Norris Jackson, Warden of the Beto Unit, (2) Terry Burson, Assistant Warden, (3) Patricia Urkuski, Correctional Officer, (4) Amy Westbrook, Correctional Officer, (5) Johnathan Gale, Correctional Officer, (6) Sherry Dickens, Correctional Officer, and (7) Michael Goldman, RN.

**I. Plaintiff Roberson's Amended Complaint—Operative Pleading**

The operative pleading in this case is Roberson's amended complaint, (Dkt. #71). An amended complaint entirely supersedes and takes the place of an original complaint. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). Roberson describes an alleged incident that occurred on the evening of September 29, 2018, and into the morning of September 30, 2018, at the Beto Unit, (Dkt. #71, pg. 4). He explains that at approximately 11:30 p.m. on September 29,

1

in F-Wing Cell 227, he and his cellmate fought over smoking K2. An officer saw both prisoners fighting and ordered them to stop. They were then taken, one-by-one, to the medical department that same evening. Although Roberson states that they began fighting around 11:30 pm, he also asserts that he arrived at the medical department at 11:00 pm on September 29. Roberson explains that he did not have any injuries after the fight with his cellmate.

He was then escorted back to his cell. Roberson further states that as he was walking with Officer Nash, Officer Nash told him to "pack up" and that he was "being moved to X-wing." *Id*. Roberson notes that before he could be moved, he "had to stop by the rank office to talk to Lieutenant Amy Westbrook" about the fight he just had with his cellmate. Roberson explains that when he entered the rank office, he was already handcuffed and it was now after midnight on September 30, 2018. *Id*.

Roberson states that other individuals were inside the rank office: Defendants Urkuski, Dickens, Gale, and Westbrook. Officer Nash stood to the side. Defendant Westbrook ask him about the fight, to which Roberson "told her everything." *Id*. at pg. 5. Roberson asserts that at the same time she was asking question(s), "she was on the computer" looking up what he was in prison for—subsequently calling him a "rapies" [sic]. Roberson also denotes that when Defendant Urkuski saw that he was entering the rank office, before anything was said, she remarked "that's the little [expletive] that got smart with me early!!" *Id*. He asserts that she then "called [him] a rapist as well." Roberson admits that he then said something "smart" to her and explains that Defendant Gale "had [him] by the arms that [were] behind [his] back in handcuffs." *Id*. Roberson asserts that Defendant Gale told him "lets go!"

Roberson explains that he "kept talking back" as he was walking to leave the rank office. *Id*. Defendant Gale then slammed his head into the wall and "jacked" his arms up such that it caused pain all while his arms were behind his back in handcuffs. When Defendant Gale slammed

2

him into a wall, Roberson states, Defendant Urkuski was "choking" him until he almost fainted and was also punching him in the face. He further denotes that Defendant Westbrook was also punching him in the face, (Dkt. #71, pg. 5). Defendant Gale "slammed" him on the floor; Roberson states that his mouth was bleeding and his wrist hurt badly.

Defendant Dickens then told them to close the "ranks door so no one could witness[]." *Id*. at pg. 6. Roberson further alleges that when he was [taken] to X-Wing "they slammed [him] again"—this time his head into the wall as prisoners were yelling. Defendant Gale then "dragged" him out into the hallway on the floor by the X-wing door. Defendant Dickens remarked that "if you was to[] just listen all of this would not happen to you." *Id*.

Roberson further asserts that he was placed in cell X-B13. He asked the officer who was working that evening who witnessed "this assault" for medical on September 30, 2018. Roberson insists that medical never came to his cell and medical never saw him. The same day, September 30, he submitted an I-60 to the medical department—asserting that they gave him the "run around." Defendant Goldman "delayed" his medical request, so he was unable to speak to anyone or be seen before he was transferred "off that unit." *Id*.

Subsequently, still on September 30, Office Nash arrived at Roberson's cell to take photographs. Roberson states that it was a camera pointing in front of his cell door, and a photograph was taken that illustrated a "swollen mouth and face." He asserts that his mouth was bleeding from the cuts and his wrist hurt badly. Roberson also states that Defendant Urkuski came back to his cell and called him a "rapist again" such that "every inmate could hear." He asked her to stop harassing him and that he planned to sue. Roberson seeks a declaration that his rights were violated, a preliminary and permanent injunction, damages, and a jury trial.

**II. Defendants' Motions to Dismiss**

Defendants filed three motions to dismiss, (Dkt. ##110, 111, 114), under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Each will be addressed in turn.

<u>1. Defendants Burson and Jackson's Motion to Dismiss</u>

Defendants Burson and Jackson maintain that Roberson failed to plead the requirements of a preliminary injunction—and even if he did, he is not entitled to one. Moreover, Defendants argue that Roberson failed to set forth facts sufficient for supervisory liability against them as Wardens. Finally, Defendants seek qualified immunity based on Roberson's failure to state a claim against them.

In response, (Dkt. #119), Roberson asserts that his claims against Warden Jackson should not be dismissed because he told Jackson "that prison officials were mistreating him before this use of force took place," (Dkt. #119, pg. 2).

<u>2. Defendants Urkuski, Westbrook, and Gale's Motion for Partial Dismissal</u>

Next, Defendants Urkuski, Westbrook, and Gale assert that Roberson's claim for injunctive relief against them is without merit. They also maintain that if Roberson is suing them in their official capacities for injunctive relief, such claims are barred by the Eleventh Amendment. Roberson did not file a response specifically to this motion.

<u>3. Defendant Goldman's Motion to Dismiss</u>

Defendant Goldman states that the Eleventh Amendment bars Roberson's claims against him in his official capacity. He also insists that Roberson's allegations against him are insufficient to indicate that he acted with deliberate indifference to Roberson's serious medical needs.

In response, (Dkt. #116), Roberson insists that Defendant Goldman acted with deliberate indifference by failing to respond appropriately to his needs and his failure to respond "at all." He

argues that Defendant Goldman intentionally delayed his treatment and caused further pain and injuries. Roberson attached a prisoner handbook and use-of-force manual to this response.

### III. Legal Standards

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint is frivolous if it lacks an arguable basis in law or fact and/or the complaint is based upon an indisputable meritless legal theory. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009); *Neitzke v. Williams*, 490 U.S. 319, 325-27 (1989). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr Cnty., Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

5

**IV. Discussion and Analysis**

<u>I. Preliminary and Permanent Injunctions</u>

Defendants maintain throughout their motions to dismiss that Roberson failed to plead sufficient facts necessary to meet the requirements of an injunction. Moreover, they argue that even if he did, he is not entitled to one.

Roberson seeks injunctive relief in his amended complaint, (Dkt. #71). Specifically, he seeks an order stopping all Defendants "from ongoing harming me and to make TDCJ put camera[s] all around every state prison in every office." He also seeks an order to "improve conditions and care" and to stop "ongoing pattern of guard brutality."

A party seeking a preliminary injunction must establish four elements: (1) that there is a substantial likelihood the party will prevail on the merits; (2) that a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendants; and (4) that the granting of the preliminary injunction will not disserve the public interest. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012). Relief should only be granted if the party seeking relief has clearly carried the burden of persuasion as to all four elements. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

The equitable injunctive power of federal courts will not be exercised save in exceptional cases to prevent irreparable injury which is clear and imminent. *See Heath v. City of New Orleans*, 320 F.Supp. 545, 546 (E.D. La. 1970), *aff'd* 435 F.2d 1307 (5th Cir. 1971). "Irreparable harm" means an injury which cannot be adequately addressed by a monetary award." *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981).

Mere speculation or conclusory allegations of an irreparable injury is insufficient. *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013);

6

*see also Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (conclusory allegations of irreparable harm do not entitled movant to injunctive relief); *Coleman v. Bank of New York Mellon*, 2013 WL 1187158 at *8 (N.D. Tex. Mar. 4, 2013) ("These unsupported, conclusory statements are insufficient to demonstrate entitlement to the extraordinary relief of a TRO and preliminary injunction."); *Mitchell v. Sizemore*, 2010 WL 457145 at *3 (E.D. Tex. Feb. 5, 2010) ("His vague and conclusory allegation that he is undergoing 'a number of problems' is insufficient to show entitlement to injunctive relief.").

Finally, principles of federalism weigh heavily against interference by federal courts through the issuance of preliminary injunctions against state or local agencies; the Supreme Court has stated that correctional administrators are to be accorded wide-ranging deference in their adoption and execution of policies and practices that, in their judgment, are needed to preserve internal order and discipline and to maintain internal security. *See Block v. Rutherford*, 468 U.S. 576, 584-85 (1984). Consequently, the Court has noted that federal district courts are not to allow themselves to become "enmeshed in the minutiae of prison operations." *Lewis v. Casey*, 518 U.S. 343, 362 (1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). In other words, federal courts do not micromanage prison operations save exceptional circumstances.

For a permanent injunction to issue, a plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)).

Here, Roberson has pleaded nothing to indicate that preliminary or permanent injunctions are warranted in this case—as his conclusory claims, with nothing more, do not meet the elements

7

required. As mentioned, Roberson seeks an injunction against Defendants—all of whom are located at the Beto Unit—from ongoing harm. He also seeks to order TDCJ, a non-party in this case, to install cameras all around each and every prison. Finally, Roberson seeks an injunction to stop all "guard brutality."

The removal of a prisoner from a prison facility, whether by transfer or release, generally renders the inmate's claims for injunctive relief for the conditions at that facility moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991). Here, Roberson's entire lawsuit and claims—the alleged violation of the Eighth Amendment through an unconstitutional use-of-force and a medical issue after the force incident—stem from his incarceration at the Beto Unit. Indeed, Roberson states that each Defendant in this case is assigned to the Beto Unit. Accordingly, Roberson's requests for an injunction against the named Defendants in this case are moot now that he is housed at the Montford Unit. *See* Dkt. # 141 (most recent notice of a change of address, docketed Jan. 20, 2022). Roberson offers no reason to suggest that this rule is not applicable in his case.

With respect to Roberson's requests for injunctive relief concerning cameras in all prisons, guard brutality, ongoing constitutional violations, and unsafe conditions, the Court notes that such claims are conclusory. Conclusory allegations are not sufficient to show entitlement to injunctive relief. *See Lakedreams*, 932 F.2d at 1007. Roberson also failed to allege that any named Defendant, all of whom are located at the Beto Unit, have the authority to install cameras on every prison unit.

Roberson's claims for injunctive relief against the named Defendants in this case are moot through his transfer off the Beto Unit. The Defendants—all of whom Roberson admits are located at the Beto Unit—cannot provide the relief he seeks. Roberson's remaining claims for injunctive relief are purely conclusory, as he provides no specifics or details, and therefore fails to meet any

of the essential elements. Defendants' motions to dismiss Roberson's claims for injunctive relief should be granted.

### 2. Supervisory Liability

Defendants Burson and Jackson argue that Roberson failed to set forth sufficient to indicate that they are liable through a theory of supervisory liability. Indeed, Roberson maintains that Defendants Burson and Jackson, Warden and Assistant Warden, were "personally responsible" for the violations of his rights and are in charge of the prisoners' welfare. In his response, Roberson explains that Defendant Jackson should not be dismissed because he told Jackson "that prison officials were mistreating him before this use of force took place," (Dkt. #119, pg. 2).

The doctrine of respondeat superior, however, does not apply to section 1983. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for a subordinate's actions on any vicarious liability theory. In fact, the Supreme Court has held that the term "supervisory liability" is actually a misnomer since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Iqbal*, 556 U.S. at 677. In *Iqbal*, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, other courts have questioned whether supervisory liability remains an option at all in section 1983 cases. *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

Under current Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations, or (3) the supervisory official implements a policy that itself is a repudiation of civil rights and is the

moving force of the constitutional violation. *See Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *see also Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) (explaining that a plaintiff in a section 1983 case establishes supervisor liability "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that result in the constitutional injury.") (internal citation omitted).

Importantly, in order to demonstrate that a supervisor is liable for constitutional violations committed by subordinate employees, "plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id*. (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).

Here, Roberson's claims of supervisory liability should be dismissed because his allegations are purely conclusory. Simply stating that Defendants were "personally responsible" is insufficient to state a claim. Moreover, Roberson has failed to allege that either of these Defendants were personally involved in any constitutional violation or any facts indicating a connection between any act of these Defendants and a resulting constitutional violation.

With respect to Roberson's response that he told Jackson "that prison officials were mistreating him before this use of force took place," and that Jackson did not care, the Court notes that Roberson is essentially maintaining that Defendant Jackson failed to protect him from the subsequent force incident.

However, Roberson failed to state a claim upon which relief can be granted. The Eighth Amendment's prohibition against the imposition of cruel and unusual punishment requires prison officials to protect prisoners from violent attacks by other prisoners; however, not every injury suffered by a prisoner rises to the level of a constitutional violation. *See Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The deliberate

10

indifference standard is very difficult to meet. *See Domino*, 239 at 756. The Supreme Court elaborated by holding that:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that as substantial risk of serious harm exists, and he must also draw the inference. …
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38. The Court further explained that prison officials who have actual knowledge of a risk of harm may not be held liable if "they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844-45 ("[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."). Crucially, in order to show that prison officials were deliberately indifferent to a prisoner's need for protection, the prisoner must prove "that the official *actually knew* of a substantial risk of serious harm and *failed to act*." *Adeleke v. Heaton*, 352 F. App'x 904, 907 (5th Cir. 2009) (per curiam) (unpublished) (emphasis added).

Here, Roberson's statement that he told Defendant Jackson that prison officials were mistreating him before this use of force took place does not sufficiently allege that Defendant Jackson had subjective knowledge concerning an excessive risk of harm to Roberson and then failed to act. *See Adeleke*, 352 F. App'x at 906 ("The deliberate indifference standard in a failure to protect claim is subjective, not objective. It requires proof that the official actually knew of a substantial risk of serious harm and failed to act."); *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) ("In other words, in order to be deliberately indifferent, a prison official must be *subjectively* aware of the risk."); *see also Williams v. MTC*, 2017 WL 8793429, at *3 (S.D. Miss. Nov. 2, 2017) ("A prison official's mere knowledge of vague threats against an inmate is not sufficient to make

11

it clear to the official that such information presents a substantial risk of serious harm to the inmate."). Roberson telling Defendant Jackson that "his officer" was mistreating him fails to connect any named Defendants to a violation and fails to indicate that Defendant Jackson knew that Roberson was at risk from the named Defendants. Accordingly, to the extent Roberson presents a claim that Defendant Jackson failed to protect him, such fails to state a claim upon which relief may be granted. Accordingly, the Court recommends that Defendant Jackson and Burson's motion to dismiss, (Dkt. #110), be granted.

        3. Personal Knowledge and Deliberate Indifference

In the final motion to dismiss, (Dkt. #114), Defendant Goldman argues that he was not personally involved in Roberson's medical care. He also asserts that Roberson failed to plead any facts indicating that he acted with deliberate indifference, thereby showing that he failed to state a claim.

Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (must be an affirmative link between injury and conduct of defendant)). The Fifth Circuit has held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992). In describing "personal involvement," the Supreme Court denoted that "there must be an affirmative link between the incident and some act by the defendant." *Rizzo*, 423 U.S. at 363; *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a

causal connection between an act of the [defendant] and the constitutional violation sought to be redressed.").

Moreover, the deliberate indifference standard is exceedingly difficult to meet. The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, "medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41F.3d 232, 235 (5th Cir. 1995).

Here, Roberson alleges that Defendant Goldman "delayed" his request such that he was unable to be seen in the medical department before he was transferred. Without mentioning Defendant Goldman, Roberson states that after he was placed in a new cell after the force incident, he asked a different officer for medical, but medical never came. In his response to the motion to dismiss, Roberson states that Defendant Goldman failed to respond appropriately or at all.

These conclusory claims are insufficient to indicate Defendant Goldman's personal involvement or that he acted with deliberate indifference to Roberson's serious medical needs. In

his amended complaint, without elaborating, Roberson merely states that Defendant Goldman "delayed" his request. Similarly, in his reply, Roberson contends that Defendant Goldman intentionally delayed his treatment after an I-60 submission—which is also conclusory. *See R.A.M. Al-Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995) (explaining that conclusory allegations are insufficient in a section 1983 proceeding).

As Defendant Goldman states, Roberson fails to provide details—such as what the request was for, how long the alleged delay was, or how any delay specifically harmed him. Roberson's response—Defendant Goldman failed "to respond appropriately" and "did not respond at all" is insufficient. Such conclusory assertions of Defendant Goldman's liability lack facial plausibility that would allow this Court to draw a reasonable inference that he is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). Accordingly, the Court recommends that Defendant Goldman's motion to dismiss be granted.

## V. Conclusion

Defendants' motions to dismiss should be granted. Roberson's requests for injunctive relief are moot and conclusory, thereby failing to meet the heightened requirement for an injunction. Roberson failed to state a claim against Defendants Burson and Jackson for their roles as supervisors. Finally, Roberson failed to state a claim against Defendant Goldman for deliberate indifference. Nonetheless, Roberson's excessive force claims against Defendants Urkuski, Westbrook, Gale, and Dickens remain pending and will proceed before the Court.

## RECOMMENDATION

Accordingly, it is recommended that Defendants' motions to dismiss, (Dkt. ## 110, 111, 114), be granted. Specifically, it is recommended that (1) all of Roberson's claims for injunctive relief be denied, (2) claims against Defendants Burson and Jackson be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted, and (3) claims against Defendant

Goldman be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted. Plaintiff Roberson's claims of the excessive use of force will remain before the Court.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 24th day of January, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE